MARTIN H. MYERS (Bar No. 130218)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2615
Telephone: +1 (415) 591-6000
Fax: +1 (415) 591-6091
Email: mmyers@cov.com

HEATHER W. HABES (Bar No. 281452)
REGAN J. HINES (Bar No. 347586)
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email:  hhabes@cov.com
            rhines@cov.com

Attorneys for Plaintiffs Instagram, LLC and Meta Platforms, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INSTAGRAM, LLC; and META PLATFORMS, INC.,<br><br>        Plaintiffs,<br><br>        v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY; SENTINEL INSURANCE COMPANY, LTD.; FEDERAL INSURANCE COMPANY; OLD REPUBLIC INSURANCE COMPANY; STARR INDEMNITY AND LIABILITY COMPANY; and ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Defendants. | Civil Case No.:  24-9500<br><br>**COMPLAINT**<br><br>**FOR DECLARATORY RELIEF; BREACH OF CONTRACT; AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Instagram, LLC ("Instagram") and Meta Platforms, Inc. ("Meta Platforms," and collectively with Instagram, "Meta"), by its undersigned attorneys, hereby complains and alleges against Defendants Hartford Casualty Insurance Company ("Hartford Casualty"), Sentinel Insurance Company, Ltd. ("Sentinel"), Federal Insurance Company ("Chubb"), Old Republic Insurance Company ("Old Republic"), Starr Indemnity and Liability Company ("Starr"), and Zurich American Insurance Company ("Zurich," and together with Hartford Casualty, Sentinel, Chubb, Old Republic, Starr and Zurich, "Insurers") as follows:

## NATURE OF THE ACTION

1.    For over 30 years, California law has been clear that an insurer is not permitted to litigate its duty to defend pending underlying litigation where the "coverage question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 301 (1993) ("*Montrose I*"). *Montrose I* itself noted the "obvious" prejudice to the insured from litigating coverage questions about the insured's allegedly intentional conduct. 6 Cal. 4th at 302. In a transparent attempt to evade this bedrock principle of California law and practice, Hartford Casualty and Sentinel—which sold insurance to Instagram and Meta Platforms in California covering, along with other things, their defense against thousands of lawsuits pending in California—sued Instagram and Meta Platforms *in Delaware*, seeking a declaration that they have no duty to defend the Social Media Cases because, among other reasons, they are purportedly based solely on Meta's "intentional" conduct.

2.    Hartford Casualty and Sentinel (together, "Hartford") initiated its action in Delaware on the very same day it mailed a letter to a Meta's risk manager in California ostensibly accepting its duty to defend. Before finally agreeing to defend, Harford delayed its coverage determination for well over a year, during which time Hartford Casualty refused to share copies of the policies it issued to Meta Platforms—the same policies that it made the subject of its Delaware lawsuit. Hartford, which has not yet paid Meta a dollar in connection with the Social Media Cases, also named Meta's other primary insurers as defendants in Delaware but made no claims against those insurers. Some of these primary insurers had already made payments towards Meta's defense, albeit with unreasonable restrictions and conditions.

COMPLAINT FOR DECLARATORY RELIEF; BREACH OF CONTRACT; AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

3.      There is no question that coverage issues Hartford now seeks to litigate in Delaware turn on facts to be litigated here, in the Social Media Cases in California.  Indeed, Hartford's complaint in Delaware wrongly accuses Meta of deliberate conduct; yet such conduct forms the basis of the Social Media Case plaintiffs' unproven *allegations* in California.  Meta faces serious prejudice if these issues are litigated first in coverage litigation—in particular in Delaware—rather than having them first determined by this Court in the Social Media Cases themselves.

4.      Accordingly, Meta has been forced to file this action to protect its rights and seek, among other relief: (a) a declaration staying this case under *Montrose I* and suspending any other coverage litigation between the parties regarding insurer duties for the Social Media Cases until those cases have concluded; and (b) a declaration that Hartford and other Insurers, which already have acknowledged their obligation to defend Meta, must continue to do so.  Meta also sets forth causes of action, which it will litigate fully here under applicable California law when the Social Media Cases have concluded, for damages for breach of contract and breach of the implied covenant of good faith and fair dealing from Insurers' unreasonable conduct, including without limitation, Hartford's calculated deception.

## COVERAGE LITIGATION BACKGROUND

5.      Starting in 2022, Meta became a target of the "Social Media Cases"—defined in this Complaint as the thousands of lawsuits by individuals, school districts, local government and tribal entities, state attorneys general, and putative class action plaintiffs, the overwhelming majority of which are in California, seeking damages and other relief because of alleged bodily injuries to users (and related property damage), including but not limited to self-harm, eating disorders, sleep disorders, suicidal behavior, and resulting death, anxiety, and depression, purportedly stemming from their use of social media services, Instagram and Facebook (the "Social Media Cases").  The vast majority of the Social Media Cases are consolidated in a multidistrict litigation, Case No. 4:22-md-03047-YGR, pending in this Court (the "MDL") or in Judicial Council Coordination Proceeding No. 5255 coordinated in the County of Los Angeles Central District Superior Court (the "JCCP") before the Honorable Carolyn Kuhl.  Other entities that provided social media services also are defendants in the MDL and JCCP cases.

COMPLAINT FOR DECLARATORY RELIEF; BREACH OF CONTRACT; AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

6.    Meta timely noticed the Social Media Cases to Insurers under commercial general liability policies they issued to Meta, and its predecessors, during the period from 2004 to 2023, but Insurers did not respond for months.  Instead, they stood back and allowed Meta to defend itself against the rapidly growing onslaught of litigation.

7.    After standing on the sidelines while Meta vigorously defended against the Social Media Cases, several Insurers finally agreed to defend at least some part of the litigation.  However, they have failed to comply fully with their defense duties, and Hartford still—*two years later*—has failed to pay a single dollar of the significant defense fees and costs that Meta has incurred.

8.    On November 1, 2024, in a letter placed in the U.S. Mail to a Meta risk manager in California, Hartford agreed, subject to a reservation of rights, to defend certain claims by individual plaintiffs alleging potentially covered injuries during certain periods.  In violation of its duty under California law to defend the entire lawsuit where any of the damages are potentially covered, however, Hartford expressly refused to defend any claims by the school districts, local government entities, and state attorneys general.  The very *same* day, without any notice or warning, Hartford filed a lawsuit against Meta in Delaware Superior Court (the "Hartford Action").  In a flagrant attempt to prevent the appropriate removal and transfer of the Hartford Action to this Court, Hartford also named other Meta general liability insurers as defendants, including Chubb unit Federal Insurance Company, an Indiana corporation like Hartford Casualty.  On December 18, 2024, Hartford filed an Amended Complaint in the Hartford Action against the same parties.  On December 20, 2024, Chubb filed an answer to Hartford's Amended Complaint, and attempted to state crossclaims solely for declaratory relief against Meta, and counterclaims and crossclaims solely for declaratory relief against other Insurers "to the extent the Court determines that Chubb has any obligation to provide coverage."  Meta removed the Hartford Action to Delaware District Court on December 27, 2024, on the bases of fraudulent joinder and realignment.

9.    The Hartford Action seeks declaratory judgment with respect to Hartford's duty to defend the Social Media Cases, and Hartford's Amended Complaint asserts that Hartford's duty is limited or excused because, among other reasons: (1) the alleged injuries do not arise from an "occurrence," but

instead solely from Meta's intentional conduct; (2) the Social Media Cases do not seek damages "because of" bodily injury or property damage as required by the policies, and (3) the alleged injuries were expected or intended by Meta and are therefore excluded.  Hartford's Amended Complaint is riddled with erroneous allegations that, if litigated, could be prejudicial to Meta's defense in the Social Media Cases.  For instance, Hartford wrongly and directly accuses Meta of, among other things, "deliberate and intentional acts in designing and marketing products to encourage excessive use and/or addict children and adolescents."  Hartford Am. Compl. ¶ 55(a).  Hartford also wrongly and directly asserts that damages sought by school districts and local government entities are "necessitated by mass social media addiction in minors."  *Id.*  ¶ 22.

10.    California law permits the insured party to stay an insurer's declaratory judgment action on the duty to defend while the underlying action remains pending where, as here, proceeding would require the insured to litigate matters that are at issue in the underlying litigation.  *Montrose I,* 6 Cal. 4th at 301; *accord Atain Specialty Ins. Co. v. 20 Parkridge, LLC,* 2015 WL 2226356, at *10-11 (N.D. Cal. May 11, 2015) (granting insured's motion to stay insurer's declaratory relief action where coverage litigation turned on facts to be litigated in underlying action).  The California Supreme Court in *Montrose I* provides an example of a "classic situation in which the declaratory relief action should be stayed" that describes the very situation here.  *Id.* at 302.  *Montrose I* explained that "when the third party [here, each plaintiff in the Social Media Cases] seeks damages on account of the insured's [here, Meta's] negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, ***the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious.***"  *Id.* (emphasis added).  Here, the underlying plaintiffs in the Social Media Cases allege claims of negligence against Meta, but Insurers argue that the Social Media Cases are barred from coverage because, among other reasons, they "are based on Meta's deliberate acts in designing and marketing products that encourage excessive use and/or addiction in children and adolescents" (Hartford Am. Compl.  ¶ 53), they allege "Meta intentionally encourages youth to excessively use its platforms, intentionally designed its products to addict children and adolescents, and concealed harmful effects that Instagram's and Facebook's design features have on

COMPLAINT FOR DECLARATORY RELIEF; BREACH OF CONTRACT; AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

children and adolescents" (*id.*), and the alleged injuries at issue in the Social Media Cases were "expected or intended" by Meta (*id.* ¶ 55(e)). The prejudice to Meta in litigating these issues in the Hartford Action in Delaware while the Social Media Cases remain pending is obvious.

11.     Meta asks the Court to preclude Insurers from seeking any coverage determination for the Social Media Cases until those cases have been resolved in order to avoid significant prejudice to Meta.

## **THE PARTIES**

12.     Plaintiffs Instagram, LLC and Meta Platforms, Inc. are corporations organized and existing under the laws of the State of Delaware, with their principal places of business in Menlo Park, California.

13.     On information and belief, Defendant Hartford Casualty Insurance Company ("Hartford") is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in Hartford, Connecticut.

14.     On information and belief, Defendant Sentinel Insurance Company, Ltd. ("Sentinel") is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

15.     On information and belief, Defendant Federal Insurance Company ("Chubb") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Indianapolis, Indiana.

16.     On information and belief, Defendant Old Republic Insurance Company ("Old Republic") is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Mount Pleasant, Pennsylvania.

17.     On information and belief, Defendant Starr Indemnity and Liability Company ("Starr") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in New York, New York.

18.     On information and belief, Defendant Zurich American Insurance Company ("Zurich") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Schaumburg, Illinois.

**JURISDICTION AND VENUE**

19.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

20.    Insurers are subject to personal jurisdiction in the State of California by virtue of their extensive business operations in this State and their sale and issuance of policies in California that cover California companies and risks located within the State, including without limitation the sale, issuance and delivery of the policies that are the subject of this action to Meta in California, and the handling of the claims that are the subject of this action via substantial activity in and/or directed to and through California, with express recognition of the applicability of California law.

21.    This action arises out of Insurers' activities in and contacts with the State of California, including without limitation having availed themselves of the California market by selling, issuing, and delivering the insurance policies at issue in this action to California-based companies and handling the claims that are the subject of this action via substantial activity in and/or directed to and through California, with express recognition of the applicability of California law, such that this Court has and may exercise personal jurisdiction over Insurers.

22.    Venue in this Court is proper under 28 U.S.C. § 1391 because the insurance policies at issue were issued by Insurers and delivered to Meta in this District, Meta is a resident of California, and the claims at issue in this action were handled via substantial activity in and/or directed to and through this District, with express recognition of the applicability of California law.

23.    Venue in this Court is also proper under 28 U.S.C. § 1391(b)(2) for at least the following reasons: (1) a substantial part of the events or omissions giving rise to Meta's claim occurred in this District, including, selling, negotiating, placing, and issuing the insurance policies at issue in and through the State of California, as well as handling, discussing, directing communications regarding, and negotiating the claims at issue in and through the State of California; (2) the policies at issue insure Meta for claims seeking damages because of bodily injury and property damage that allegedly occurred in this District; and (3) a majority of the suits and claims for which coverage is at issue in this case are pending in this District and before this Court.

## GENERAL FACTUAL BACKGROUND

### a)  Meta's General Liability Policies Provide Broad Coverage.

24.    To protect itself against claims for liability to third parties because of bodily injury and property damage, Meta paid millions of dollars to purchase commercial general liability insurance from Insurers for a continuous series of annual policy periods, collectively covering periods including October 9, 2004 to October 9, 2023.

25.    Hartford Casualty sold and issued primary insurance coverage to "The Face Book, Inc.," predecessor in interest to Meta, on an annual basis from October 9, 2004, to October 8, 2007.  Despite repeated requests by Meta in the last year for copies of the policies, Hartford Casualty declined to share copies with Meta, or even to confirm their existence.  Having improperly withheld the policies from Meta, on November 1, 2024, Hartford Casualty, along with Sentinel, filed a lawsuit against Meta in Delaware seeking declaratory judgment under the Hartford Policies.  Only in the complaint in the Hartford Action did Hartford Casualty concede for the first time that it sold and issued to Meta: Policy No. 57 SBA AW9679 DX, effective from October 1, 2004, to October 1, 2005 (the "2004 Hartford Policy"); Policy No. 57 SBA AZ6549 SC, effective from October 1, 2005, to October 1, 2006 (the "2005 Hartford Policy"); and Policy No. 57 SBQ RG7020 SC, effective from October 1, 2006, to October 1, 2007 (the "2006 Hartford Policy") (collectively, the "Harford Policies").  Hartford Am. Compl.  ¶ 25.  Meta has succeeded to and holds all right, title, and interest in the Hartford Policies, including without limitation all right, title, and interest to pursue the insurance coverage involved in this matter.  To date, Hartford has continued to withhold copies of the Hartford Policies.

26.    Sentinel sold and issued primary insurance coverage to "Instagram a/k/a Burbn, Inc.," predecessor in interest to Meta, under Policy No. 57 SBA BB7385 SC, from December 19, 2011, to December 19, 2012 (the "Sentinel Policy").  Meta has succeeded to and holds all right, title, and interest in the Sentinel Policy, including without limitation all right, title, and interest to pursue the insurance coverage involved in this matter.

27.    Chubb sold and issued primary insurance coverage to Facebook, Inc., predecessor in interest to Meta, under a series of policies (effective October 9, 2007 to October 9, 2016) that all bear

the same policy number–Policy No. 3589-24-66 PLE (the "Chubb Policies").  Meta has succeeded to and holds all right, title and interest in the Chubb Policies, including without limitation all right, title, and interest to pursue the insurance coverage involved in this matter.

28.    Old Republic sold and issued primary insurance coverage to Facebook, Inc., predecessor in interest to Meta, under Policy Nos. MWZY308504 (effective October 9, 2016 to October 9, 2017) and MWZY311176 (effective October 9, 2017 to October 9, 2020) (the "Old Republic Policies").  Meta has succeeded to and holds all right, title, and interest in the Old Republic Policies, including without limitation all right, title and interest to pursue the insurance coverage involved in this matter.

29.    Starr sold and issued primary insurance coverage to Facebook, Inc., predecessor in interest to Meta and/or Meta Platforms, Inc., under Policy Nos. 1000100155201 (effective October 9, 2020 to October 9, 2021), 1000100155211 (effective October 9, 2021 to October 9, 2022), and 1000100155221 (October 9, 2022 to October 9, 2023) (the "Starr Policies").  Meta has succeeded to and holds all right, title, and interest in the Starr Policies, including without limitation all right, title, and interest to pursue the insurance coverage involved in this matter.

30.    Zurich sold and issued primary insurance coverage to Facebook, Inc., predecessor in interest to Meta, and/or Meta Platforms, Inc. under Policy Nos. ZE 3730650-02 (effective October 9, 2018 to October 9, 2019), ZE 3730650-03 (effective October 9, 2019 to October 9, 2020), ZE 3730650-04 (effective October 9, 2020 to October 9, 2021), ZE 3730650-05 (effective October 9, 2021 to October 9, 2022), and ZE 3730650-06 (effective October 9, 2022 to October 9, 2023) (the "Zurich Policies," together with the Hartford Policies, Sentinel Policy, Chubb Policies, Old Republic Policies, Starr Policies, and Zurich Policies, the "Policies").  Meta has succeeded to and holds all right, title, and interest in the Zurich Policies, including without limitation all right, title, and interest to pursue the insurance coverage involved in this matter.

31.    The Policies identified above impose on Insurers a duty to pay on behalf of Meta all sums that Meta becomes legally obligated to pay as "damages" because of "bodily injury" that occurs during the policy period, caused by an "occurrence," subject to retentions or deductibles (if any) and policy limits.

32.     The Policies identified above provide that Insurers have the right and duty to defend Meta and to pay Meta's defense fees and costs for any suits seeking damages that are at least potentially covered by the policy sold and issued by such Insurer, even if the allegations of the claims or lawsuits are groundless, false, or fraudulent, subject to retentions or deductibles (if any).  Under admittedly applicable law, Insurers' duty to defend Meta includes the obligation to defend Meta against all claims in suits seeking any potentially covered damages, including without limitation those claims that are not covered.

33.     The Policies typically define "occurrence" to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

34.     The Policies typically define "bodily injury" to mean "physical injury, sickness or disease sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time."

35.     Meta is an "Insured" or "Named Insured" or "Additional Insured" under each of the Policies.

36.     Certain Insurers have contended, and others may contend in this case, that one or more of the Policies contains an exclusion or limitation that limits or precludes coverage for some of the damages potentially covered under the Policies.

37.     The alleged exclusions do not preclude all *potential* for coverage under any of the Policies, or excuse any of the Insurers from its duty to defend Meta under applicable California law.

**B.      The Underlying Social Media Cases Allege Potentially Covered Damages.**

38.     Meta Platforms, Inc. (formerly named Facebook, Inc.) started as a website known as The Facebook in 2004.  Meta now provides various services that help people connect to their friends and family, find communities, and grow businesses.  These services include Facebook, Instagram, and WhatsApp.

39.     Beginning in early 2022, Meta became a target of numerous lawsuits around the United States in which individual plaintiffs, school districts, local government and trial entities, and state attorneys general alleged widespread bodily injuries to users, including self-harm, eating disorders, sleep

disorders, suicidal behavior, and resulting death, anxiety, and depression, as well as damage to property allegedly stemming from Meta's social media services (as identified above, the "Social Media Cases"). Many of the Social Media Cases are consolidated in a multidistrict litigation pending before this Court (the MDL) or before a Los Angeles Superior Court in Judicial Council Coordination Proceeding No. 5255 coordinated in the County of Los Angeles Central District Superior Court (the JCCP).

40.     The MDL and JCCP are centralized lawsuits in which plaintiffs allege damages because of bodily injury or property damage that allegedly occurred during the periods of policies Insurers sold and issued to Meta.

41.     As the Court is aware, the Social Media Cases include over two thousand individual plaintiffs, including three individual plaintiffs bringing class actions, two of which are brought putatively on behalf of classes of youth users of Meta's social media services ("Individual Plaintiffs"); over twelve hundred school district and local government and tribal entity plaintiffs (the "School District/Local Government Plaintiffs"); and forty-five state attorneys general (the "State AG Plaintiffs"). There are thirty-one State AG Plaintiffs in the MDL and fourteen State AG Plaintiffs that have filed suit against Meta in their respective state courts.

42.     These three general types of plaintiffs in the underlying Social Media Cases are seeking damages because of alleged bodily injury (including without limitation self-harm, eating disorders, sleep disorders, suicidal behavior, and resulting death, anxiety, and depression) and property damage (including without limitation vandalism and destruction) allegedly arising from Meta's services and activities: (1) Individual Plaintiffs (i.e., allegedly injured persons, or persons seeking to recover on behalf of an allegedly injured person), (2) School District/Local Government Plaintiffs; and (3) State AG Plaintiffs.

43.     The Individual Plaintiffs, School District/Local Government Plaintiffs, and some of the State AG Plaintiffs allege that Meta negligently designed its services (alleged to be "products" in the complaints) with features and algorithms that allegedly increased the risk of abuse and addiction in youth, which allegedly led to negative effects including bodily injury (self-harm, eating disorders, sleep disorders, suicidal behavior, and resulting death, anxiety, and depression). These plaintiffs also allege

that Meta negligently failed to provide adequate warnings about the risks of using Meta's services and/or negligently minimized these risks. These plaintiffs also allege that Meta negligently failed to implement adequate parental controls, reporting tools, and other means to reduce these risks.

44.    The Social Media Cases are still in the fact discovery stage of litigation and will remain there for several months. In the MDL, on November 14, 2023, this Court (Hon. Gonzalez Rogers, J.) issued a ruling dismissing some parts of the Individual Plaintiffs' "priority" claims and allowing others to proceed. In approximately December 2023, the parties commenced discovery. Meta has also filed motions to dismiss the remaining claims brought by the Individual Plaintiffs and the suits brought by the School District/Local Government Plaintiffs and the State AG Plaintiffs, which this Court has granted in part and denied in part; Meta has filed a notice of appeal of the Court's rulings on the failure-to-warn claims, with plaintiffs in the Social Media Cases filing notices of cross-appeals. Meta has produced approximately two million documents to date. Under the current case schedule in the MDL, the fact discovery cutoff is April 4, 2025, and the close of expert discovery is August 27, 2025.

45.    Discovery is also proceeding in the JCCP, which has generally been following the protocols and timeline established in the MDL. In the JCCP, Hon. Judge Kuhl issued an order on Meta's demurrer to the Individual Plaintiffs' Master Complaint on October 13, 2023, sustaining the demurrer as to all but two of the Individual Plaintiffs' claims. On June 7, 2024, the JCCP court issued an order on Meta's demurrer and motion to strike four representative School District/Local Government Plaintiffs' complaints, sustaining the demurrer in full; Plaintiffs have filed a notice of appeal, and the School District/Local Government Plaintiffs' claims in the JCCP are currently stayed. There are no State AG Plaintiffs in the JCCP.

46.    Individual Plaintiff cases have been selected for Individual Plaintiff bellwether discovery pools in the MDL and JCCP, and School District Plaintiff cases have been selected for a School District bellwether discovery pool in the MDL. Discovery is proceeding for all three bellwether pools.

47.    Because the Social Media Cases are still in the discovery stages, neither the claims by the Individual Plaintiffs, School District/Local Government Plaintiffs, or State AG Plaintiffs, nor Meta's defenses to those claims have been resolved.

48.     To date, Meta has incurred significant defense fees and costs, well in excess of any of the retentions or deductibles in the Policies, in defending the Social Media Cases. Meta anticipates that it will continue to incur substantial defense expenses in connection with the Social Media Cases, likely including for future, additional lawsuits making allegations similar or identical to the existing Social Media Cases.

**C.     Insurers Have Breached Their Defense Obligations.**

49.     Beginning no later than October 2022, and on numerous occasions since then, Meta has requested that Insurers honor their contractual obligations to defend Meta in the Social Media Cases, which seek damages that are covered or at least potentially covered by the Policies.

50.     On March 27, 2023, Hartford initially denied coverage, both for defense and indemnity. The primary basis on which Hartford denied coverage was its mistaken assertion that the plaintiffs in the Social Media Cases did not seek damages "because of" "bodily injury" or "property damage" during Hartford's policy period. In response, Meta sent multiple letters to Hartford explaining why the damages were at least potentially covered by the Hartford Policies, including that the plaintiffs sought damages for alleged bodily injury and property damage that occurred during Hartford policy periods, and demanding that Hartford agree at least to defend.

51.     Then, over a year after it had initially denied coverage, on June 3, 2024, Hartford finally– subject to a broad, attempted reservation of rights–acknowledged potential coverage for certain damages claimed by Individual Plaintiffs in the Social Media Cases, which Hartford stated it would identify in subsequent correspondence. But no such correspondence was sent. Meta repeatedly requested that Hartford identify the damages for which it had acknowledged potential coverage. Months later, on November 1, 2024, Hartford placed in the U.S. Mail a letter to a Meta risk manager in the Northern District of California containing, among other things, a list of the specific claims by Individual Plaintiffs that it ostensibly agreed to defend as potentially covered by the Hartford Policies, but it denied any duty to defend the claims for damages because of bodily injury and/property damage sought by the School District/Local Government Plaintiffs and the State AG Plaintiffs. In any event, Hartford has not actually paid any of Meta's defense fees and costs incurred to date. The defense fees and costs retroactive to

COMPLAINT FOR DECLARATORY RELIEF; BREACH OF CONTRACT; AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Meta's tender of the Social Media Cases to Hartford more than a year ago still are outstanding, due and owing under the Hartford Policies.

52.      Rather than pay, the same day it mailed the letter to Meta in California, Hartford filed the Hartford Action in Delaware against Meta and Insurers seeking declarations that it has no duties at all to Meta.  To date, unlike other Insurers that Hartford included as defendants in the Hartford Action in an attempt to defeat diversity jurisdiction, and despite an acknowledgement of its duty to defend, Hartford has not paid a single dollar toward Meta's defense fees and costs for the Social Media Cases.  Instead, it has paid coverage litigation counsel to prepare and file the Hartford Action complaint and amended complaint, making improper and incorrect allegations contrary to Meta's interests, and risking substantial prejudice to Meta in the very Social Media Cases Hartford agreed it would defend.

53.      The grounds cited in Hartford's November 1, 2024, reservation of rights/denial also are the basis for its complaint in the Hartford Action.  Hartford contends that insurance coverage for Meta is barred by, among various grounds:

a)   The contention that the Social Media Cases do not allege an "occurrence" or "accident" under California law because they are based on allegations regarding Meta's deliberate and intentional acts;

b)   The incorrect and prejudicial statement that Meta committed "deliberate and intentional acts in designing and marketing products to encourage excessive use and/or addict children and adolescents";

c)   The contention that the Social Media Cases do not seek damages "because of" bodily injury, property damage, or personal or advertising injury within the meaning of the Hartford Policies;

d)   The contention that the Social Media Cases do not seek damages because of "bodily injury," "property damage," or "personal or advertising injury" within the meaning of the Hartford Policies;

COMPLAINT FOR DECLARATORY RELIEF; BREACH OF CONTRACT; AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

e) The incorrect and prejudicial statement that School District/Local Government Plaintiffs have incurred "expenditures and operating costs necessitated by mass social media addiction in minors" allegedly caused or contributed to by Meta;

f) The contention that the Social Media Cases allege bodily injury, property damage, or personal or advertising injury only outside the policy periods covered by the Hartford Policies;

g) An exclusion for "Expected or Intended Injury";

h) An exclusion for "Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information"; and

i) An exclusion for "Professional Services."

54. For its part, Chubb has agreed to defend Meta, subject to an attempted reservation of rights, with respect to damages sought by Individual Plaintiffs and School District/Local Governments Plaintiffs. Chubb has denied any duty to defend the claims for damages sought by the State AG Plaintiffs. However, by operation of law, Chubb's duty to defend extends to the defense of all claims in the Social Media Cases. To date, Chubb improperly has paid only a small fraction of the defense fees and costs that Meta has incurred for the Social Media Cases, and has taken more than a year to process invoices submitted by Meta for payment.

55. Other Insurers have not indicated their coverage positions regarding the Social Media Cases or have contended or intimated that their policies have no obligation to respond at this time.

56. Insurers have an obligation to defend Meta fully and completely and pay for Meta's defense in the underlying Social Media Cases, which seek potentially covered damages for alleged bodily injury and/or property damage resulting from Meta's alleged negligence. Insurers have refused or failed to meet and satisfy their obligations and duties to defend Meta fully and completely in the Social Media Cases. Insurers' refusal and failure to defend Meta, or to pay its defense expenses, for the Social Media Cases, violates and breaches Insurers' obligations to Meta under and in connection with the Policies.

57.     All conditions to coverage under the Policies have been performed, have occurred, or have been satisfied and/or waived.  In the alternative, Meta was excused from performance thereof or Insurers have forfeited or waived performance thereof, by virtue of their contractual breaches or otherwise.  Meta paid, and/or continues to pay, all premiums and amounts required under the Policies and any ancillary or related agreements.  Meta timely notified, and continues to notify, the relevant Insurers of the Social Media Cases.

### D.     The Court Should Stay This Action And Suspend Any Coverage Litigation Between The Parties Until The Social Media Cases Have Concluded.

58.     California law applies to the interpretation and enforcement of the Policies.

59.     California law has long recognized that proceedings in an insurance coverage case can prejudice a policyholder's defense in ongoing underlying litigation when the disputed insurance coverage issues may, or do, overlap with facts being litigated in the underlying action.  *See, e.g., Montrose I*, 6 Cal. 4th at 301-302.

60.     To avoid such prejudice, it is a basic rule of California insurance law that a liability "insurer cannot, over the insured's objection, use a declaratory relief action as a forum to litigate factual issues affecting the insured's liability in the underlying action.  Rather, such issues must be litigated in the underlying action."  *Riddell, Inc. v. Superior Ct.*, 14 Cal. App. 5th 755, 767 (2017).  To prevent an insurer from effectively "join[ing] forces with the plaintiffs in the underlying action[] as a means to defeat coverage," California law provides that a court "*must* stay" an insurer's "declaratory relief action" when the "factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation."  *Great Am. Ins. Co. v. Superior Ct.*, 178 Cal. App. 4th at 235-36 (emphasis in original); *see also Montrose I*, 6 Cal. 4th at 301 ("[A] stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action").

61.     Consistent with this established rule, courts stay insurance coverage proceedings when the insurer seeks to adjudicate coverage defenses that overlap with the factual issues in the underlying litigation.  *See, e.g.*, *Riddell*, 14 Cal. App. 5th at 767 (insurers could not obtain discovery in insurance

coverage action about "extent and timing" of insured's "knowledge" of the "risks" of playing football wearing helmets at issue because those are "facts at issue in the third party actions"); *Montrose Chem. Corp. v. Superior Ct.*, 25 Cal. App. 4th 902, 909-10 (1994) ("*Montrose II*") (factual findings in the insurance coverage action may "collaterally estop [the insured] from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage"); *Travelers Prop. Cas. Co. of Am. v. Salesforce.com, Inc.*, 2021 WL 1376575, at *1 (N.D. Cal. Apr. 13, 2021) *aff'd*, 2024 WL 4286968 (9th Cir. Sept. 25, 2024) (insured "would be entitled to a stay of [insurer's] indemnification claim because the factual question of whether [insured] acted negligently, which is conduct covered under the insurance policy, or intentionally and knowingly, which is conduct not covered under the insurance policy, is at the heart of both this lawsuit and the Texas state court litigation"); *Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, 2015 WL 2265900, at *4 (N.D. Cal. May 14, 2015) (staying action because insurer's attempt to prove that damages sought by plaintiff in underlying action were "ill-gotten or wrongfully acquired would be precisely the type of adjudication prohibited by *Montrose II*").

62.    As evidenced by the complaint and Amended Complaint in the Hartford Action, the declarations that Insurers seek in order to avoid their defense obligations involve facts which are alleged by the underlying plaintiffs, and in dispute in the Social Media Cases.

63.    For example, Hartford's positions that the Social Media Cases do not allege injuries based on an "occurrence" (*i.e.*, an accident), or that the "Expected or Intended Injury" exclusion applies, require Hartford to establish that Meta was not merely negligent, but rather acted intentionally to harm the Social Media Case plaintiffs.  Indeed, Hartford already has made the incorrect and prejudicial statement that "[t]he Social Media Lawsuits are based on Meta's deliberate acts in designing and marketing products that encourage excessive use and/or addiction in children and adolescents." Hartford Am. Compl. at ¶ 53.  This same allegation of intent, which Meta strenuously disputes, is made in the Social Media Cases; permitting it to be litigated simultaneously in the Hartford Action in Delaware is a recipe for chaos and potential inconsistency.  This is not the only example of problematic factual overlap between the cases.  Hartford assumes that the plaintiffs in the Social Media Cases "are

generally injured persons" and that the damages sought by the School District/Local Government Plaintiffs are "expenditures and operating costs necessitated by mass social media addiction in minors." *Id.* ¶¶ 20, 22. Furthermore, its Amended Complaint reveals Hartford's intent to prejudicially and erroneously argue that coverage is barred under the policies it sold Meta because the Social Media Cases allege that "Meta's deliberate and intentional acts in designing and marketing products to encourage excessive use by and/or addict children and adolescents" and that plaintiffs' injuries were "expected or intended" by Meta. *Id.* ¶¶ 55(a) & (e).

64. For these reasons, any litigation by Insurers against Meta at this time over coverage for the Social Media Cases will seek to adjudicate disputed questions against the interests of the insured, Meta. The factual overlap makes suspension of all coverage litigation against Meta regarding the Social Media Cases mandatory until the Social Media Cases are resolved. *See Riddell*, 14 Cal. App. 5th at 765 ("[I]f the factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation, the trial court *must* stay the declaratory relief action").

65. Meta therefore asks the Court to stay this action under *Montrose I* and to suspend any coverage litigation between the parties regarding insurer duties for the Social Media Cases until those cases have concluded. Meta further asks this Court to declare that those Insurers, which already have agreed to defend, must continue to do so pending conclusion of the Social Media Cases.

## FIRST CLAIM FOR RELIEF

### FOR DECLARATORY RELIEF RE: SUSPENSION OF COVERAGE LITIGATION

66. Meta repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

67. Meta seeks a declaration of certain of the parties' rights and duties under the Policies in accordance with Section 1060 of the California Code of Civil Procedure, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

68. Specifically, an actual controversy of a justiciable nature presently exists between Meta and Insurers with respect to whether Insurers can litigate their duty to defend Meta while the Social Media Cases remain pending.

69.     Meta contends that litigation of Insurers' duty to defend, including issues of whether Meta's alleged conduct was "intentional" or resulted in injuries that were "expected or intended" by Meta, would be prejudicial to Meta's defense of the Social Media Cases.  Meta further contends that California law applies, and under California law, coverage litigation regarding Insurers' duty to defend must be suspended under the circumstances until the Social Media Cases conclude.  *Montrose I*, 6 Cal. 4th at 301.

70.     On the other hand, by initiating coverage litigation in Delaware, Insurers appear to contend that Meta does not have the right to suspend coverage litigation against it and/or that coverage litigation is appropriate at this time because the coverage questions do not overlap with facts being litigated in the Social Media Cases.

71.     The controversy between Meta and Insurers is ripe for judicial review.

72.     The controversy is of sufficient immediacy to justify the issuance of declaratory relief.

73.     Meta accordingly seeks a declaration from the Court that the disputed insurance coverage issues may, or do, overlap with facts being litigated in the underlying Social Media Cases, which could result in prejudice to Meta's defense, so this action shall be stayed and any other coverage litigation between the parties shall be suspended until the Social Media Cases have fully concluded, and attorney's fees.

## SECOND CLAIM FOR RELIEF

### FOR DECLARATORY RELIEF RE: CONTINUING DEFENSE

74.     Meta repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

75.     Meta seeks a declaration of certain of the parties' rights and duties under the Policies in accordance with Section 1060 of the California Code of Civil Procedure, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

76.     Specifically, an actual controversy of a justiciable nature presently exists between Meta and Insurers with respect to whether Insurers must continue to defend Meta for those claims that they already have agreed seek potentially covered damages while the Social Media Cases remain pending,

even if this action and other coverage litigation is suspended pending resolution of the Social Media Cases.

77.    Meta contends that suspension of coverage litigation between Meta and Insurers does not impact their ongoing obligation to pay defense fees and costs in connection with claims in the Social Media Cases which Insurers already have agreed seek potentially covered damages and as to which they have a duty to defend.

78.    On the other hand, Insurers appear to contend that Meta does not have the right to recover defense fees and costs for the Social Media Cases while this case and/or other coverage litigation between Meta and Insurers is suspended pending conclusion of the underlying Social Media Cases.

79.    The controversy between Meta and Insurers is ripe for judicial review.

80.    The controversy is of sufficient immediacy to justify the issuance of declaratory relief.

81.    Meta accordingly seeks a declaration from the Court that suspension of coverage litigation between Meta and Insurers does not impact Insurers' ongoing obligation to pay defense fees and costs in connection with claims in the Social Media Cases which Insurers already have agreed seek potentially covered damages and as to which they have a duty to defend, and attorney's fees.

## THIRD CLAIM FOR RELIEF

### FOR BREACH OF CONTRACT

82.    Meta repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

83.    The Policies are written contracts under which Insurers agreed, in consideration of premiums paid, to provide certain insurance benefits to Meta.

84.    Meta has satisfied all conditions precedent to its recovery under the Policies, or in the alternative, Insurers have waived, or are estopped from asserting, these conditions as Insurers to coverage, or Meta's performance is otherwise excused.

85.    Insurers have breached and continue to breach their contractual obligations under California law by refusing to pay all, or a significant portion, of Meta's defense fees and costs in the Social Media Cases, and for Meta's ongoing defense in the Social Media Cases.

86.     As a direct and proximate result of Insurers' breach of contract, Meta has suffered and continues to suffer substantial damages in an amount exceeding the jurisdictional minimum of this Court and in an amount to be proven at trial, and attorney's fees.

## FOURTH CLAIM FOR RELIEF

### FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

87.     Meta repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

88.     Implied in the Policies is a covenant that Insurers would, *inter alia*, act in good faith and deal fairly with the insured, do nothing to interfere with the Meta's right to receive the benefits of the Policies, not place its interests ahead of the insured, not force the insured to litigate to obtain the benefits of the Policies, and generally treat the insured fairly and in good faith.

89.     Insurers have not complied with these duties and instead certain of the Insurers have breached them by one or more of the following acts and omissions by, among other things:

a) Refusing to compensate Meta fully for its defense of the Social Media Cases without a reasonable basis;

b) Withholding from Meta copies of the Hartford Policies for years in the face of Meta's repeated requests and then filing a lawsuit against Meta under those same policies;

c) Delaying in responding to Meta's requests for defense without a reasonable basis;

d) Filing and/or seeking to prosecute coverage litigation against Meta in Delaware without notice and in an apparent attempt to secure a perceived advantage, while imposing significant burden and prejudice to Meta's defense in the Social Media Cases;

e) Forcing Meta to litigate to obtain coverage to which it is entitled under the Policies.

90.     Insurers committed the acts alleged above for the purpose of consciously withholding from Meta the rights and benefits to which Meta is entitled under the Policies and without considering the interests of the insured at least to the same extent as they did their own interests.

91.     Insurers' acts are inconsistent with the reasonable expectations of their insured, are contrary to established norms, practices and legal requirements related to insurance claims, are contrary

to the express terms of the Policies and constitute bad faith and a breach of the implied covenant of good faith and fair dealing.

92.    Insurers' conduct is and has been undertaken with a conscious disregard of Meta's rights as beneficiaries of the Policies.

93.    Insurers' conduct is despicable and has been done with a conscious disregard of the insured's rights, constituting oppression, fraud and/or malice, in that Insurers willfully and intentionally engaged in a series of acts with the intent to deny the insured benefits that Insurers promised to provide in exchange for premium payments.  The conduct alleged herein amounts to oppressive, malicious, and fraudulent conduct within the meaning of California Civil Code Section 3294.  Therefore, Meta is entitled to recover punitive damages from Insurers in an amount sufficient to punish Insurers and to deter similar conduct in the future.

94.    Meta is informed and believes and thereon alleges that Insurers' acts were performed, authorized and/or ratified by their officers, directors, and managing agents, and/or with the advance knowledge or conscious disregard of its officers, directors, and managing agents.

95.    As a direct and proximate result of Insurers' breaches and violations, Meta has suffered and continues to suffer substantial damages in an amount exceeding the jurisdictional minimum of this Court and to be determined at trial.  Such damages include, among other things, the costs to prove its entitlement to coverage, including in connection with its First, Second, and Third Claims of Relief in this lawsuit, which are recoverable under *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985).

## PRAYER FOR RELIEF

WHEREFORE, Meta respectfully requests that this Court enter judgment as follows:

1.    On its First Claim for Relief, for declaratory judgment in favor of Meta and against Insurers declaring that the disputed insurance coverage issues may, or do, overlap with facts being litigated in the underlying Social Media Cases, which could result in prejudice to Meta's defense, so this action shall be stayed and any other coverage litigation between the parties shall be suspended until the Social Media Cases have fully concluded, and for attorneys fees pursuant to *Brandt*, 37 Cal. 3d at 819;

2.     On its Second Claim for Relief, for a declaratory judgment in favor of Meta and against Insurers declaring that suspension of coverage litigation between Meta and Insurers does not impact Insurers' ongoing obligation to pay defense fees and costs in connection with claims in the Social Media Cases which Insurers already have agreed seek potentially covered damages and as to which they have a duty to defend, and for attorneys fees pursuant to *Brandt*, 37 Cal. 3d at 819;

3.     On its Third Claim for Relief, (i) compensatory damages sufficient to compensate Meta for all costs incurred in connection with defending the Social Media Cases; (ii) special and incidental damages arising from Insurers' breach of contract; (iii) prejudgment interest at the maximum legal rate; and (iv) attorneys fees pursuant to *Brandt*, 37 Cal. 3d at 819;

4.     On its Fourth Claim for Relief, (i) damages in an amount to be proven at trial, including attorneys fees and costs incurred in obtaining the benefits due under the Policies; (ii) punitive damages, and (iii) prejudgment interest at the maximum legal rate;

5.     As to all Claims of Relief, an award of such other and further relief that the Court deems just and proper.

DATED: December 30, 2024              **COVINGTON & BURLING LLP**


By: */s/ Heather W. Habes*

Martin H. Myers
Heather W. Habes
Regan J. Hines

*Attorneys for Plaintiffs Instagram, LLC and Meta Platforms, Inc.*

COMPLAINT FOR DECLARATORY RELIEF; BREACH OF CONTRACT; AND BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING

## **DEMAND FOR JURY TRIAL**

Plaintiffs INSTAGRAM, LLC as successor in interest to Instagram a/k/a Burbn, Inc.; META PLATFORMS, INC. f/k/a TheFacebook Inc. d/b/a The Face Book, Inc. hereby demand a trial by jury on all issues so triable.


DATED: December 30, 2024                               **COVINGTON & BURLING LLP**



                                        By:  */s/ Heather W. Habes*_____

                                              Martin H. Myers
                                              Heather W. Habes
                                              Regan J. Hines

                                              *Attorneys for Plaintiffs Instagram, LLC and Meta*
                                              *Platforms, Inc.*

COMPLAINT FOR DECLARATORY RELIEF; BREACH OF CONTRACT; AND BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING